1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PHYLLIS HARVEY-BUSCHEL,

                        Plaintiff,

        v.

UNIVERSITY OF WASHINGTON,

                        Defendant.

CASE NO. 2:20-cv-01775-RSL

ORDER GRANTING IN PART
DEFENDANT'S MOTIONS IN LIMINE

        THIS MATTER comes before the Court on "Defendant University of Washington's Motion

in Limine" (Dkt. # 75). Having reviewed the memoranda, declarations, and exhibits submitted by

the parties, the Court finds as follows:

        **1.      Testimony of Dr. Alan Feldberg**

        Dr. Feldberg is plaintiff's treating psychologist, and he intends to testify that plaintiff

suffered significant emotional distress during and after termination of her employment, distress that

continues to interfere with her ability to hold a full-time position in the STEM field. Defendant seeks

an order precluding Dr. Feldberg from testifying at trial because he was not timely or properly

disclosed or, in the alternative, limiting his testimony to areas within his expertise, to opinions

formed during the course of treatment, and to non-hearsay.

        Federal Rule of Civil Procedure 26(a)(2)(A) requires that all witnesses who will provide

expert testimony be disclosed. If the expert was retained for purposes of litigation, he or she must

provide a detailed report setting forth the information specified in Fed. R. Civ. P. 26(a)(2)(B). If, as is the case here, the witness was not specially retained to provide expert testimony, he or she need only state "the subject matter" of the anticipated testimony and "a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C). In a March 2021 letter to defense counsel, Dr. Feldberg introduced himself and summarized his treatment of plaintiff as it relates "to her past job, the therapy that focused on this, and the ongoing issues that she brings into therapy sessions having to do with her past job." Dkt. # 74 at 61. He also disclosed his opinion that plaintiff suffered a marked deterioration of her psychological and physical state after Dr. King's arrival at MESA and noted that, although the severity of her symptoms lessened when her position was terminated, "a significant part of her continued treatment focuses on her adaptation to the trauma of her work situation at the University of Washington." Dkt. # 74 at 63. Considered in its entirety, the letter substantially complies with Rule 26(a)(2)(C). Because the disclosure and statement were made well before the October 6, 2021, deadline established by the Court, defendant's timeliness objection is overruled.[1] Defendant's first motion in limine is DENIED.

---

[1] In its motion, the University sought to limit Dr. Feldberg's testimony on the grounds that he lacks expertise to diagnose stress/anxiety and/or that his causation opinion is not the product of reliable principles and methods. The argument was abandoned in reply. Even if considered on the merits, the objection would be overruled on the existing record. Federal Rule of Evidence 702 "consists of three distinct but related requirements: (1) the subject matter at issue must be beyond the common knowledge of the average layman; (2) the witness must have sufficient expertise; and (3) the state of the pertinent art or scientific knowledge permits the assertion of a reasonable opinion." *U.S. v. Finley*, 301 F.3d 1000, 1007 (9th Cir. 2002). The University does not seriously contend that Dr. Feldberg lacks the qualifications to diagnose stress and anxiety, catalogue its impacts on the patient, and provide psychotherapy. Nor does it argue that the subject matter of the proposed testimony is common knowledge. With regards to reliability, Dr. Feldberg's opinions are not unreliable simply because they are based on the patient's statements and the doctor's subjective assessment of the truthfulness of those statements. *Id.* at 1009. The proper test in evaluating medical expert testimony examines whether "physicians would accept it as useful and reliable." *U.S. v. Sandoval–Mendoza*, 472 F.3d 645, 655 (9th Cir. 2006) (analyzing admissibility of psychologists' and neuropsychologists' opinions as to effect of brain damage due to pituitary tumor). The record does not contain any indication that Dr. Feldberg used a methodology for diagnosing and treating plaintiff that differed in any material respect from the general practice of psychotherapy.

2.        **Discipline of Dr. Gregory King**

In February 2012, Dr. King received a written reprimand from Seattle Public Schools, his then-employer. Dr. King contested the action, and the reprimand was removed from his file.[2] Dr. King was hired by the University of Washington in February 2019. Federal Rule of Evidence 404(b)(1) precludes plaintiff from using evidence of a prior wrong or act "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." In an attempt to get around this prohibition, plaintiff argues that she is not offering evidence regarding this prior reprimand to suggest that Dr. King acted wrongfully in 2019, but rather to show that the University was aware of the prior reprimand, knew that plaintiff was seeking a new job title and concomitant pay increase, and "was motivated to hire [Dr.] King to retaliate, harass, and terminate" plaintiff's employment. Dkt. # 88. This theory is without any evidentiary basis: there is no indication that the activity giving rise to the 2012 reprimand would make Dr. King an effective hatchet man, nor is there any evidence that the University considered the reprimand as a positive in the selection process. Even if this evidence were admissible under Rule 404(b)(2), its prejudicial effect and the undue delay of a mini-trial regarding this temporally remote conduct far outweigh its minimal probative value, making it inadmissible under Fed. R. Civ. P. 403. Defendant's second motion in limine is GRANTED.

3.        **Failure to Fill MESA Positions After Reorganization**

Plaintiff's theory of the case is that the reorganization of MESA was a pretext to terminate her employment after she requested a change in job title and pay increase. She intends to show that

---

[2] The subject of the reprimand is unclear. A third party reviewed publicly available information and concluded that the issue was what Dr. King knew about a report of inappropriate staff behavior, when he knew it, and what he should have done with the information. Dkt. # 74 at 202. There is no indication that Dr. King himself was guilty of inappropriate behavior.

the newly-created positions went largely unfilled, from which she will argue that the reorganization was really about saving costs by terminating senior staff members. The University argues that its failure to fill the open positions was caused by the pandemic and related budget cuts. Both parties will be able to present their evidence and their interpretation of the evidence to the jury. Defendant's third motion in limine is DENIED.

### 4.    Language in University's Investigation Report

In June 2019, plaintiff lodged a complaint with the University Complaint Investigation and Resolution Office ("UCIRO"). She asserted that her work environment had become very stressful after she complained about Dr. King's behavior in March 2019 and that the University had a preference for one specific ethnicity to the detriment of the others. Dkt. # 52 at 234. She sought UCIRO's help in obtaining a fair and unbiased decision on her position review request (which was still under consideration at the time) and an inquiry regarding why the University had been hostile to her request for reclassification and dismissive of her concern that she had been working outside the scope of her job duties for approximately five years. UCIRO concluded its investigation of plaintiff's complaint in July 2020, finding no violation of the University's antiharassment, antidiscrimination, and antiretaliation policies (Dkt. # 57-11 at p. 21), but concluding that some of Dr. King's interactions with staff did not meet an acceptable professional standard (Dkt. # 57-11 at p. 33). UCIRO also noted that "another concerning theme that came up was what could be viewed as coded age-related language." *Id*. The University seeks to exclude this last comment.

The author of the investigative report made clear during her deposition that the reference to coded age-related language was an attempt to record statements that the MESA employees who lost their jobs in the reorganization attributed to Ricky Hall and Patricia Loera. Dkt. # 74 at 105. She stated that the comments did not involve plaintiff, MESA, or Dr. King, that they were outside

the scope of her investigation, that she did not question Mr. Hall or Ms. Loera about any alleged age-coded statements, and that she made no findings as to whether or not the statements were actually made. *Id*. at 106. The probative value of the uninvestigated and unconfirmed reference to coded age-related language in the UCIRO report is substantially outweighed by the unfair prejudice, likelihood of confusion, and significant risk of misleading the jury that would arise if it were admitted at trial. Plaintiff and her colleagues may testify about what they heard Mr. Hall and Ms. Loera say, Mr. Hall and Ms. Loera can respond, and the jury will decide whether coded age-related language was used and how it relates to plaintiff's claims in this litigation. The University's fourth motion in limine is GRANTED.

**5.    Testimony of Melvin J.R. Nobles**

Mr. Nobles was a K-12 Director to whom plaintiff confided her displeasure with Dr. King and her fears regarding the reorganization plan. Plaintiff intends to call Mr. Nobles to testify regarding his observations of how Dr. King treated plaintiff and his conclusions regarding Dr. King's motivations based on those observations. In June and July 2021, the University attempted to serve Mr. Nobles with a records  subpoena seeking:

> -- All communications, including but not limited to emails, text messages, instant messages, and other electronic or written forms of communication, to or from Phyllis Harvey-Buschel between August 1, 2018 and the present.
>
> -- All documents relating to any complaints or concerns by you or anyone else concerning Dr. Gregory King or the WA MESA program.
>
> -- All documents relating the reorganization of the WA MESA office at the University of Washington or the potential or actual layoff of staff there in 2019.

Dkt. # 74 at 138. It is unclear what document was actually served on Mr. Nobles,[3] but the only version in the record contains a return date of June 23, 2021, approximately a week before the subpoena was served. Mr. Nobles did not respond, and defense counsel threatened to "move to compel compliance with the records subpoena, seek fee reimbursement, and exclude his testimony at trial." Dkt. # 74 at 136. The University then served Mr. Nobles with a subpoena to testify and produce the same list of documents at deposition on October 14, 2021. Dkt. # 145 and 148. Mr. Nobles appeared for his deposition, but did not produce any records. Although he agreed to produce responsive documents within three weeks, he has not done so.

The University seeks to exclude Mr. Noble's testimony as a sanction for failing to comply with the records subpoenas. It argues that his testimony would be unfairly prejudicial because the University has been deprived of its ability to effectively depose and cross-examine him at trial. The University does not identify any line of questioning at the deposition that was hindered by the lack of production. Nor does it explain how the failure to produce the requested documents impedes its ability to cross-examine Mr. Nobles on his observations of Dr. King's treatment of plaintiff. If, as it now asserts, Mr. Noble's communications with plaintiff are essential to its litigation strategy, the University should have and could have moved to compel as it said it would in August 2021. Precluding plaintiff, who appropriately disclosed Mr. Noble as a person with relevant knowledge and produced her communications with the witness, from calling Mr. Noble as a witness because the University chose not to seek to compel compliance under Fed. R. Civ. P. 37(a)(1) would be unfair in the absence of any indication that plaintiff procured or encouraged the non-compliance. The University's fifth motion in limine is DENIED.

---

[3] Defense counsel states that the subpoena attached to his declaration as Exhibit M was the subpoena that was served on Mr. Nobles through plaintiff's counsel. Exhibit M is not a subpoena.

1

2

### 6.      Testimony of Ana Mari Cauce

Plaintiff can prove the extent and content of Mr. Hall's communication with University President Ana Mari Cauce through documents and questioning of Mr. Hall. She will not be permitted to call at trial an "apex" witness who had no role in the acts of which plaintiff complains, has very limited knowledge regarding those acts, and whose information is wholly duplicative of that found elsewhere. The University's sixth motion in limine is GRANTED.

### 7.      Testimony of Dr. Tiffany Brandreth

Dr. Brandreth was hired to provide oversight and project management of the 360 BERK Assessment of MESA, with the goal of informing the resulting strategic planning process. Dkt. # 60 at ¶ 5. Plaintiff intends to offer the testimony of Dr. Brandreth to rebut the University's contention that the 2015 consulting report justified the reorganization of MESA and/or plaintiff's termination. Plaintiff did not disclose Dr. Brandreth as a potential witness at the beginning of the case or in response to a discovery request asking her to identify all persons with knowledge relevant to her claims, but she obtained and produced Dr. Brandreth' declaration to rebut arguments raised by the University in its motion for summary judgment. When the University objected to the involvement of an undisclosed witness, plaintiff offered to make Dr. Brandreth available for deposition. The University declined, noting that discovery had already closed and trial was only a month away. The University argued that it should not be required to take time from its pretrial preparations to depose Dr. Brandreth, that scheduling her deposition on short notice "may prove impossible," and that plaintiff's trial-by-ambush tactics could only be countered by exclusion of the witness. Dkt. # 75 at 20.

The trial date was stricken in March 2022 and ultimately rescheduled for April 2023. The University made no effort to serve discovery on or depose Dr. Brandreth for months, finally

accepting plaintiff's offer to depose her in October 2022. The University nevertheless maintains its objections to her testimony because she has not produced records.

The Court finds that plaintiff's failure to identify Dr. Brandreth until it became clear how the University intended to use the 2015 BERK report was justified. Both sides knew of Dr. Brandreth's involvement in the assessment, but plaintiff intended to rely on the resulting report to prove her points. It was not until the University used the report for a different purpose that Dr. Brandreth's testimony because relevant. The University's evolving objections to Dr. Brandreth's testimony coupled with its failure to make any effort to obtain the discovery it deems essential do not establish prejudice or otherwise justify the exclusion of the now-relevant information. Defendant's seventh motion in limine is DENIED.

### 8.   Written Statement of James Dorsey

Plaintiff does not dispute that the September 24, 2020, statement signed by Mr. Dorsey is inadmissible. Defendant's eight motion in limine is GRANTED.

### 9.   Written Expert Reports

Plaintiff does not dispute that the experts' written reports are inadmissible. Defendant's ninth motion in limine is GRANTED.

### 10.   Denials of Requests for Admissions

Plaintiff does not dispute that Requests for Admission which were denied are inadmissible. Defendant's tenth motion in limine is GRANTED.

### 11.   Hearsay Statements of MESA Advisory Board Members

One or both parties intend to call as witnesses members of the MESA Advisory Board to testify regarding their personal knowledge of the MESA reorganization, what was and was not communicated to them, and their communications regarding the proposed reorganization. To the

extent plaintiff intends to ask witnesses what a MESA Advisory Board member told them, defendant objects on hearsay grounds. The objection is sustained. The MESA Advisory Board members are not speaking agents for the University, and there is nothing in the record suggesting that the statements describe or explain an event and were made while or immediately after the declarant perceived it for purposes of Fed. R. Ev. 803(1). Whether a particular exhibit purporting to reflect the statements of an Advisory Board member will be admitted or excluded will be determined at trial.

### 12.   Addendum Report from William Brandt

In his initial report, Mr. Brandt noted that there would be significant adverse tax consequences associated with a lump-sum recovery of damages in this case, but that he had not been asked to assess or calculate those consequences. Seven weeks after the expert disclosure deadline, Mr. Brandt produced an addendum report offering opinions regarding the tax implications of a damage award in plaintiff's favor. Plaintiff asserts that she does not intend to introduce evidence or make arguments regarding adverse tax consequences to the jury. The University's twelfth motion in limine is therefore GRANTED.

Dated this 27th day of February, 2023.

Robert S. Lasnik
United States District Judge

ORDER GRANTING IN PART DEFENDANT'S MOTIONS
IN LIMINE - 9